UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Jessica Franco,<br><br>Debtor. | Case No.: 24-21084-ABA |
| JESSICA FRANCO,<br><br>Plaintiff,<br><br>v.<br><br>REAL PORTFOLIO 13, LLC,<br><br>Defendant. | Adv. No.: 24-01626-ABA<br><br>Chapter: 13<br><br>Judge: Hon. Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is an assertion that the transfer of real property through a final judgment foreclosing the right of redemption in favor of a tax sale certificate owner pursuant to the New Jersey Tax Sale Law was a violation of the Takings Clause of the United States Constitution and the New Jersey Constitution. There is also an alternative assertion that the transfer is an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). The court concludes that since the New Jersey legislature amended the Tax Sale Law to specifically address the constitutional concerns raised in *Tyler v. Hennepin County*, 598 U.S. 631 (2023) and *57-261 20th Avenue Realty, LLC v. Roberto*, 477 N.J. Super. 339, 307 A.3d 19 (App. Div. 2023) *aff'd as modified by* 259 N.J. 417, 327 A.3d 1177 (2025), and that the amended Tax Sale Law governs this transaction, the Debtor's takings claim fails. In addition, the Debtor is unable to demonstrate that there was less than reasonably equivalent value involved in the transfer and consequently, cannot succeed on a fraudulent transfer claim. The complaint will be dismissed in its entirety.[1]

---

[1] Inasmuch as the Complaint itself fails to state a claim for which no relief can be granted, the court need not address the allegation that the wrong party has been named as a defendant because even if the proper party was identified through an Amendment, the relief would still not be granted.

## JURISDICTION

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

This matter comes before the court on creditor's, Real Portfolio 12, LLC (hereinafter "RP12") Motion to Dismiss the complaint (the "Complaint", Doc. No. 1) filed by the Debtor, Jessica Franco, in this Adversary Proceeding, Adv. Pro. No. 24-01626 (the "AP"), Doc. No. 6, together with the motion of RP12 for relief from stay (the "Stay Motion") in Debtor's main case, Bankr. Case No. 24-21084 (the "Main Case"), as to real property located 2928 High Street, Camden, New Jersey 08105 (the "Property") owned by Debtor. Main Case Doc. No. 12. Debtor filed a reply asserting that she had filed the AP to reclaim ownership of the Property under the takings theory (although the Complaint also contains another Count under the fraudulent transfer theory). Main Case Doc. No. 14. On the original return date of the Stay Motion, the court determined that it was appropriate to consolidate the Stay Motion together with and/or treat the motion as a motion to dismiss that RP12 stated it intended to pursue in the AP. The parties agreed. An order was entered in that regard which provided certain conditions and the opportunity to conduct further discovery. *See* Main Case Doc. No. 16. Thereafter the court received additional briefing from the parties, AP Doc. Nos. 7 and 8, and Main Case Doc. Nos. 28 and 30. The parties appeared and made argument. The record is closed. The matter is now ripe for disposition.

The following relevant facts are undisputed.

On June 18, 2012, the City of Camden purchased the tax sale certificate on the Property. On April 11, 2023, the City of Camden assigned a tax sale certificate to Real Portfolio 13, LLC. Complaint, ¶ 9. The tax sale certificate was secured by the Property. The tax sale certificate was subsequently assigned to RP12 and foreclosure proceedings were instituted consistent with New Jersey's Tax Sale Law. On April 25, 2024, the Superior Court of New Jersey entered an Order Setting Date, Time, Place and Amount of Redemption. AP Doc. No. 6-2, Ex. B. Debtor did not redeem the Property. *Id*.

On September 6, 2024, RP12 sent written notice to the Debtor of her right to proceed to judicial sale to recoup any excess equity in the property. Main Case Doc. No. 15-6. The Debtor did not request a judicial sale of the Property and on October 11, 2024, the Superior Court of New Jersey entered a Civil Action Final Judgment to foreclose Franco's right of redemption in the Property ("Final Judgment"), AP Doc. No. 6, Ex. B, by which RP12 became the owner of the

Property.[2] AP Doc. No. 1, Complaint ¶¶ 7–11. On October 30, 2024, RP12 filed an ejectment action.  The Debtor then filed for bankruptcy on November 7, 2024. AP Doc. No. 1, Complaint, ¶ 1.

By way of further background, when the Debtor and several other Franco family members inherited the Property from Felicita Franco in April 2017, any pre-existing judgment liens docketed against either Felicita Franco or her heirs attached to the Property simultaneously with the heirs' inheritance. Thus, the Property was encumbered by pre-existing judgment liens in addition to the tax sale certificate held by the City of Camden. See AP Doc. No. 1, Complaint ¶ 12. For example, a judgment lien attached to the Property in the amount of $83,683.80 based upon the judgment entered against Edgar Franco, a co-heir, docketed on June 7, 2010. Another judgment lien attached to the Property following docketing of a judgement lien on November 1, 2017, in the amount of $94,833.75 against the Debtor's grandmother Felicita Franco. See AP Doc. No. 6-3, Ex. C at p. 15, 22. The Property was transferred solely to the Debtor on September 23, 2019, and the previously attached judgment liens of at least $197,000.00 remained on the Property following the transfer to the Debtor. AP Doc. No. 1, Complaint, ¶ 12,

The Debtor has obtained an appraisal of the Property valuing it at $55,000.00. AP Doc. No. 1, Complaint, Ex. A.  The Debtor's *own* appraisal, conducted after the Debtor filed her bankruptcy petition, identifies the Property as uninhabitable and states:

> The subject is a circa 1925 dwelling. The overall condition on the day of the appraisal was found to be poor. Currently the dwelling is best described as mostly a shell. The first floor has had most walls taken down to the studs. Several walls have unfinished sheet rock installed, some remain uncovered. The kitchen is non-existent at this time. The basement area was not viewed as the stairs were removed due to rot. All basement features are based upon an extraordinary assumptions being made by the appraiser. The second floor walls in most rooms are intact. The bathroom has no toilet, sink, or floor (only sub floor). The attic is a walk up attic that has some finished walls and a floor. The exterior has some damaged siding. The rear yard is over grown and has some concrete debris from an unknown source. *The interior has a very strong pungent odor throughout that is presumed to be animal urine and feces.

AP Doc. No. 1, Complaint, Ex. A. p. 3.  Despite this condition, the Debtor incredibly claims that the Property is her residence, *Id*. at Complaint ¶ 2, and counsel has repeatedly reminded the court that she claims to reside in the Property. On her Statement of Financial Affairs, the Debtor valued the property at $120,000.00.  Main Case Doc. No. 1.  Curiously, after having her own appraisal conducted fixing the value of the Property at $55,000.00, on her and Amended Statement of Financial Affairs, she still claimed the value at $120,000.00.  Main Case. Doc. No. 32 . Furthermore, the Debtor did not claim any exemption in the Property on schedule C of her petition and indicated on her plan that she would *not* be avoiding any judicial liens. Main Case Doc. No. 1

---

[2]  In addition to naming the Debtor as a defendant, RP12 named as defendants other entities such as the State of New Jersey who held judgment liens against the Property. The Final Judgment eliminated all the judgment liens fixed to the Property held by the named defendants.

and No. 4.s As of this time, the court is unable to locate any amended pleadings addressing these items. *See* Main Case Docket.

## DISCUSSION

<u>Motion to Dismiss Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012(b), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. A motion made under Rule 12(b)(6) challenges the legal sufficiency of a claim in order to determine whether it should proceed. *Morris v. Azzi*, 866 F. Supp. 149, 152 (D.N.J. 1994).

In considering a Rule 12(b)(6) motion, the reviewing court must accept all of the factual allegations contained within the complaint as true. See *U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005). Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Ultimately, dismissal is appropriate only if there are not "enough facts to state a claim to relief that is plausible on its face."

<u>The Parties' Arguments</u>

In her Complaint, the Debtor asserts that the transfer of the Property pursuant to the New Jersey Tax Sale Law, N.J.S.A. §§ 54:5-85 – 54:5-104.75 ("TSL") was a violation of the Takings Clause of the United States Constitution and the New Jersey Constitution. Debtor seeks an order avoiding the transfer and compelling Real Portfolio 13, LLC to restore title to the Debtor. In the alternative, Debtor asserts the transfer is an avoidable transfer pursuant to 11 U.S.C. § 548(a)(1)(B) (transfer voidable where less reasonable equivalent value was received). Debtor seeks to set aside the transfer via the TSL as fraudulent and an order compelling Real Portfolio 13, LLC to pay her $27,900.00 representing her Section 522(d)(1) exemption — although none was taken.

RP12 has moved to dismiss the adversary proceeding asserting the Debtor doesn't have a colorable claim to the property and lacks any equity in the property. RP12 further argues that under the recently amended TSL, N.J.S.A. § 54:5-87(a) and (b) (effective July 10, 2024) (the "2024 TSL"), any right to redemption or surplus equity was extinguished when the Debtor failed to request a judicial sale to recoup any excess equity and the judgment of foreclosure was entered. RP12 contends that because it followed the procedures set forth in the 2024 TSL, the Debtor's takings claim was extinguished in a manner consistent with *Tyler v. Hennepin County*, 598 U.S. 631 (2023) ("*Tyler*") and *Nelson v. City of New York,* 352 U.S. 103 (1956) (finding that because the New York City ordinance did not absolutely preclude an owner from obtaining the surplus proceeds of a judicial sale, but instead simply defined the process through which the owner

could claim the surplus, we found no Takings Clause Violation). *See* Main Case Doc. No. 15 at 2-3.

RP12 further contends that *Tyler* stands only for the proposition that if a taking occurred a foreclosed property owner may receive just compensation and not vacatur of the foreclosure. Relying upon *Knick v. Twp. of Scott*, 588 U.S. 180, 201 (2019), RP12 argues that the only remedy available for a taking is money damages and that the amended TSL provides a monetary remedy via the option to request a sheriff's sale.

Next, citing *Wright v. Trystone Cap. Assets, LLC*, 649 B.R. 625 (Bankr. D.N.J. 2023), RP12 notes that pursuant to 11 U.S.C. § 522(h) the Debtor can only avoid the transfer of the Property to the extent of her exemption in the Property. RP12 argues the Debtor can't claim an exemption because she does not have any equity in the Property due to the Property being over encumbered by liens. RP12 further argues, without any citation to relevant statutes or case law, that Debtor cannot utilize a bankruptcy case to avoid pre-existing judgment liens against a property when those judgments are not against the debtor.

RP12 also contends that pursuant to the *Rooker-Feldman* Doctrine the Debtor is barred from collaterally attacking the Final Judgment because the 2024 TSL now addresses takings claims in its statutory framework. RP12 notes absent a conflict between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights and that Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. AP Doc. No. 8 at 2 (citing *Matter of Roach*, 824 F. 2d 1370, 1373-74 (3d Cir. 1987) and *Butner v. United States*, 440 U.S. 48, 54 (1979)).

Finally, RP12 argues that because the Final Judgment specifically states "all persons claiming by, from or under them, stand absolutely debarred and foreclosed of any and all right, and equity of redemption *and claims to surplus equity...*" the Debtor's adversary complaint is an improper collateral attack on the Final Judgment since any right to claim the surplus equity is foreclosed by N.J.S.A. § 54:5-87(a). *See* AP Doc. No. 8 at 2 (quoting Final Judgement, Ex. A at page three (3) (emphasis in original)).

In response, the Debtor argues the TSL is designed to protect a property owner's excess equity whereas she is using bankruptcy to protect and/or reclaim ownership of the property. Debtor argues that her failure to seek a judicial sale of the property to recover the excess value should not prohibit her right under federal law to use Chapter 13 to save the property rather than recover the cash equity. Debtor compares her attempt to recover the property using bankruptcy law to a borrower who under state law is prohibited from reinstating a loan and decelerating debt by entry of a foreclosure judgment but upon filing of bankruptcy is then able to use Section 1322 and 1325 to decelerate and reinstate loan by paying back the arrears. Debtor also asserts *Knick* is distinguishable because that case involved a trespass and the only remedy for trespass is monetary damages whereas is in this case a non-monetary remedy is available, *i.e.* the return of the Property to the Debtor. Debtor also asserts this court's opinion *Virella v. TLOA of NJ, LLC*, 661 B.R. 199 (Bankr. D.N.J. 2004) ("*Virella*") authorizes a claim to reacquire ownership of the Property.

Debtor also disputes RP12's claim that she does not have any equity in the Property due to pre-existing liens. Debtor argues she, like Ms. Tyler, could have used the excess equity, in this case, $36,000.00 (the difference between the appraised value and the amount of the Final Judgment) to pay other liens.

Count I

As to the substance of this Motion to Dismiss, in Count I of her complaint, the Debtor alleges a takings claim under the United States Constitution and the New Jersey Constitution and seeks relief under *Tyler*, *257-261 20th Avenue Realty, LLC v. Roberto*, 477 N.J. Super. 339, 307 A.3d 19 (App. Div. 2023) ("*Roberto I*") *aff'd as modified by* 259 N.J. 417, 327 A.3d 1177 (2025) ("*Roberto II*"),[3] and *Virella*. Debtor claims that *Tyler* and *Roberto I* apply to her claim under the doctrine of pipeline retroactivity. Complaint at ¶ 17. While *Tyler* remains the pertinent Supreme Court precedent the applicability of *Roberto I* and *Virella* is limited by the amendment to the TSL.

First, the statute in question. The sale of tax delinquent properties is governed by the TSL. Section 5-86(a) of the TSL, which governs foreclosures on tax sale certificates, like here, provides:

> a. When the municipality is the purchaser of a tax sale certificate, the municipality, or its assignee or transferee, may, at any time after the expiration of the term of six months from the date of sale, institute an action to foreclose the right of redemption…for all other persons that do not acquire a tax sale certificate from a municipality, an action to foreclose the right of redemption may be instituted at any time after the expiration of the term of two years from the date of sale of the tax sale certificate. On instituting the action the right to redeem shall exist and continue until barred by the judgment of the Superior Court, except as set forth in R.S.54:5-87.

N.J.S.A. § 54:5-86(a).[4] There is no dispute that this statute applies to this situation and that RP12 followed proper procedure when it obtained the Final Judgment consistent with this statute.

Alternatively, the Debtor asserts a cause of action for a takings claim under the Fifth Amendment to the United States Constitution consistent with the principles espoused in *Tyler*. Complaint, ¶¶ 16 and 17. Without question, the Takings Clause set forth in the Fifth Amendment applies to the States through the Fourteenth Amendment. *Roberto II*, 259 N.J. at 448. In fact, recently, the New Jersey Supreme Court, incorporating the reasoning of *Tyler* and the relevant historical and traditional legal principles and prior precedents contained therein, *Roberto II*, 259 N.J. at 428 and 443, held that "the version of the TSL in effect *before 2024* runs counter to the

---

[3] In *Roberto II*, the New Jersey Supreme Court affirmed the Superior Court Appellate Division's conclusion that pursuant to the Supreme Court of the United States' recent ruling in *Tyler* the pre-2024 TSL violated both the Fifth Amendment and the New Jersey Constitution because the law did not allow a property owner the opportunity to recoup any excess equity that existed when a tax sale certificate holder foreclosed upon a property.

[4] The City of Camden assigned the tax sale certificate to Real Portfolio 13, LLC, which then assigned the tax sale certificate to RP12.

principles outlined in *Tyler* and violates the Takings Clause of the Fifth Amendment." *Roberto II*, 259 N.J. at 448 (emphasis added). As a consequence, the purpose of the 2024 TSL was to specifically bring the TSL *"into compliance with the 2023 United States Supreme Court decision in [Tyler]* concerning the ability of a property owner, whose right to redeem a tax lien on their property has been foreclosed by the holder of a tax sale certificate, to receive any of the owner's equity remaining in the property after the tax lien foreclosure." Assembly Appropriations Committee Statement to Assembly dated June 24, 2024, found at https://www.njleg.state.nj.us/bill-search/2024/A3772/bill-text?f=A4000&n=3772_S2 (last visited March 7, 2025) (emphasis added)

Accordingly, the 2024 TSL, at N.J.S.A. § 54:5-87(b), now provides, in relevant part:

> b. In an action brought pursuant to subsection a. of R.S.54:5-86, in order to preserve any equity that may exist in the property being foreclosed, ***the owner, or the owner's heirs, shall have the right to demand, by written request to the Superior Court before the date that the final judgment is entered, that the holder of the tax sale certificate foreclose the right to redeem that certificate in the same manner as a mortgage through a judicial sale as in the manner of the foreclosure of a mortgage of the property*** through the office of the county sheriff or, in the alternative, through an Internet auction of the property through the office of the county sheriff. . . ***In the event that the owner or the owner's heirs do not demand a judicial sale or an Internet auction,*** the owner of the tax sale certificate may proceed under subsection a. of this section and foreclose without a judicial sale or an Internet auction, and t***he owner and the owner's heirs shall have no claim against the holder of the tax sale certificate for any equity in the property.*** . . .

*Id.* (Emphasis added).

What is more, the 2024 TSL applies to any tax lien for which the right of redemption has not been foreclosed as of its effective date, July 10, 2024. N.J.S.A. § 54:5-87(b) (Notes stating Section 11 of the L. 2024 c. 39 provides for immediate effect upon "any tax lien for which the right of redemption has not been foreclosed as of the effective date") found at https://www.njleg.state.nj.us/bill-search/2024/A3772/bill-text?f=PL24&n=39_ (lasted visited March 4, 2025). The Assembly Appropriations Committee Statement to Assembly dated June 24, 2024, states the committee amended the bill to "[r]equire that the process set forth in section 3 of the bill would be the exclusive method through which the owner or the owner's heirs may assert a claim to any surplus funds by motion to the Superior Court." https://www.njleg.state.nj.us/bill-search/2024/A3772/bill-text?f=A4000&n=3772_S2  (last visited March 4, 2025). During oral argument on the Motion to Dismiss, the Debtor's counsel admitted the 2024 TSL was in effect at the time the Final Judgment was entered in this case and that she is bound by it since the right of redemption against the Property had not yet been foreclosed.

As noted above, the purpose of the 2024 TSL was to specifically bring the TSL into compliance with the Supreme Court's decision in *Tyler* concerning the ability of a property owner, whose rights in their property has been foreclosed by the holder of a tax sale certificate to receive

any of their equity remaining in property after the tax lien foreclosure. As such, it appears that the 2024 TSL does not conflict with that ruling but rather corresponds with it. A review of the legislative history of the 2024 TSL appears to reflect that the New Jersey legislature balanced viewpoints and interests and acted within its powers when amending the TSL. Accordingly, "[i]t is not the province of this Court, nor of any other court, to determine whether the goal of the [legislature] was wise nor whether the method selected to achieve that goal would be effective. Public policy is a matter within the realm of the legislature and not of the judiciary. . . . [I]t is immaterial that the Courts might have done things differently." *Matter of Morris*, 12 B.R. 321, 347 (Bankr. N.D. Ill. 1981). As it stands today, the 2024 TSL remains in full force and effect and it does not appear to conflict with the holding in *Tyler* and application of the Takings Clause under the United States Constitution.

In determining property rights in bankruptcy, courts look to applicable state law. *United States v. Butner*, 440 U.S. 48, 54 (1979); *In re Varquez*, 502 B.R. 186, 189 (Bankr. D.N.J. 2013) ("The nature and extent of the debtors' interest in property are defined by state law"). Under the prior iteration of the TSL a debtor was unable to recovery excess equity when a property was foreclosed upon pursuant to a tax sale certificate. This process violated both the United States Constitution and the New Jersey Constitution pursuant to *Tyler* and *Roberto I*. Following the issuance of *Tyler* and *Roberto I*, the New Jersey Assembly amended the TSL to allow property owners the opportunity to reclaim the excess equity in their properties from tax sale certificate holders. *Roberto II*, 259 N.J. at 434. Under the 2024 TSL, a property owner may recover any equity by requesting a judicial sale of the property. Property owners who fail to request a judicial sale "have no claim against the holder of the tax sale certificate for any equity in the property." N.J.S.A. § 54:5-87(b).

In *Nelson v. City of New York*, 352 U.S. 103, 110 (1956), the statute allowed the City to foreclose on tax delinquent properties after four years. The statute permitted delinquent property owners seven weeks to either pay the delinquencies or file an answer. If the property owner failed to either redeem or answer, then the City was permitted to foreclose the owner's right, title and interest and equity in and to the delinquent property. The City could then retain the property or sell it and retain the entire proceeds. *Id.* at 104, fn. 4. The Supreme Court held that the City's retention of the excess equity was not a constitutional violation because the delinquent owner was given an opportunity to redeem the property. *Id.* at 110.

The 2024 TSL complies with both *Tyler* and *Nelson* as the property owner is given the opportunity to either redeem the property or request a judicial sale in order to recoup the excess equity. Here, the Debtor failed to either redeem the Property or request the judicial sale and thus is barred under the 2024 TSL from any claim of ownership of the Property or excess equity in the Property. The Debtor's argument that she, like Ms. Tyler, could use the excess equity to pay down other liens would be persuasive if the Debtor had taken any steps under the TSL to either redeem the Property or recover any alleged excess equity. The Debtor comprehensively failed to make any effort to retain the Property or the equity despite being given ample opportunity. The Debtor cannot now run into bankruptcy court and claim an unconstitutional taking under federal or state law.

In addition, the Debtor's reliance upon my *Virella* opinion is completely misplaced. In *Virella* the question before me was whether the debtor, who at the time *Tyler* was handed down

was actively, albeit unsuccessfully, seeking in state court to vacate the foreclosure of his property pursuant to the TSL, was in the pipeline for purposes of a retroactivity analysis. I concluded that because of Mr. Virella's active attempts to vacate the foreclosure, he was in the pipeline for purposes of asserting a takings claim pursuant to *Tyler* and *Roberto I*. More importantly, I did not decide the case on the merits but instead, what was before me was a request for injunctive relief. I was simply deciding whether there was a plausible claim which was enough for me to issue an injunction. Nothing more — and I was very clear on this point. While the opinion may have speculated in *dicta* regarding what kind of takings claim Mr. Virella could assert, I did not opine on this issue. This is abundantly clear.

Additionally, *Virella* was issued prior to the amendment of the TSL and prior to any other cases interpreting *Tyler* and *Roberto I*. I was limited to what existed at that time. The 2024 TSL effectively renders any analysis or court speculation in *Virella* inapplicable. Thus, *Virella's* retroactivity analysis is not applicable to Debtor's case as the prior version of the TSL has been superseded by the 2024 TSL and the foreclosure on the Property proceeded pursuant to the 2024 TSL. As far as this court is concerned, *Virella* was applicable to a very small group of debtors, which does not include this Debtor, and the court cannot imagine that any other debtors to whom *Virella* would apply still exist. *Virella* is effectively dead letter law given the promulgation of the 2024 TSL.

The Debtor cannot state a claim to relief that is plausible on its face and accordingly, Count I of the Complaint is dismissed.[5]

Count II

The court now turns to Count II of the Complaint which truly focuses on whether the Debtor received less than reasonably equivalent value for the transfer of the Property when she was insolvent[6] and therefore the transfer is a voidable fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) of the Bankruptcy Code.[7] It is the Debtor's burden to prove this element by a preponderance of the evidence. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006).

As to the Debtor's argument, through statements made by counsel at oral argument, it is the court's understanding that the Debtor's theory is that at the time of the transfer, all liens against the Property were extinguished since the Final Judgment transferred the Property to RP12 free and clear of all liens. As such, since the Property, without liens and encumbrances, was worth more than the amount of the tax lien, it was a fraudulent transfer because she did

---

[5] Given that the court concludes Debtor has failed to state a claim, the court need not address the Debtor's arguments regarding the remedy sought and the inapplicability of *Knick*.

[6] RP12 made no argument as to the Debtor's insolvency and as such, insolvency is assumed.

[7] It is important to note that the Final Judgment would "not be deemed a sale, transfer, or conveyance of title or interest to the subject property under the provisions of the "*Uniform Voidable Transactions Act*," R.S.25:2-20 et seq." N.J.S.A. § 54:5-87. It would appear then, that no separate relief can be afforded to the Debtor under New Jersey's fraudulent transfer law.

not receive a reasonably equivalent value. Under this theory, what the Debtor would have the court do is avoid the transfer back to the time the transfer took place as if no transfer took place and ignore the liens that were in place at the time of the transfer — which liens were avoided *only because of the transfer*. The quintessential example of having your cake and eating it too! If this is the Debtor's theory, it has no basis in law or fact. Indeed, the parties did not cite to any law that allows it to ignore and/or exclude any liens or encumbrances against property that were in place at the time of the transfer, which lien or encumbrances were only eliminated because of the transfer in the first place, when determining reasonably equivalent value. Such a preposterous theory must fail. For example, *see In re Jones*, No. No. 02–15197-DWS, 2004 Bankr. LEXIS 1273, 2004 WL 1924888 (E.D. Pa. Bankr July 27, 2004) (holding that avoidance of the foreclosure judgment and sale placed the parties in their previous position, allowing the creditor to assert a secured claim under 11 U.S.C.S. § 506(a)); *In re Cole*, 89 B.R. 433 (Bankr. E.D. Pa. 1988) (holding that when a sheriff's sale is set aside pursuant to Section 548 the parties are set back into the position they assumed prior to the transfer).

Even if the court misunderstands the Debtor's theory, Count II must still fail. In *In re GGI Properties, LLC*, 568 B.R. 231 (Bankr. D.N.J. 2017), this court, after thorough analysis, determined that 11 U.S.C. § 548(a)(1)(B) can be applied to tax sale foreclosures. The key in *GGI Properties*, like here, was whether there was reasonably equivalent value provided at the time of the transfer. To determine that, the court must conduct a factual analysis based upon the totality of the circumstances "including (1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) 'the transferee's good faith.'" 568 B.R. at 250 *citing*, *In re R.M.L., Inc.*, 92 F.3d 139, 148–49 (3d Cir. 1996) ("totality of the circumstances" analysis required). "The transaction is reviewed at the time the transfer was made." *GGI Properties*, 568 B.R. at 250 (citation omitted). Here, there is also no question or allegation as to the existence of an arm's-length transaction and good faith with regard to the transfer of the Property to RP12 and the court could find none. So, these elements are satisfied. *Id*. But was there reasonably equivalent value given?

"In determining whether a debtor received reasonably equivalent value, the Third Circuit applies a two-step analysis: (a) first, whether the debtor received any value from the transaction in question; and (b) whether that value was reasonably equivalent to the value transferred, considering a totality of circumstances." *In re Green Field Energy Servs., Inc.*, 594 B.R. 239, 292 (Bankr. D. Del. 2018) (*citing In re R.M.L., Inc.*, 92 F.3d at 152). There is no challenge to the notion that RP12, as a result of the Final Judgment, received the value of the Property in exchange for the Debtor's antecedent tax debt. *See also GGI Properties,* 568 B.R. at 250. Accordingly, the first element is satisfied.

As to the second element:

> . . . the Court must determine whether that value was reasonably equivalent to what the debtor gave up. The determination of "reasonable equivalence" is largely a factual question, to which latitude is given the trier of fact. *Jacoway v. Anderson (In re Ozark Rest. Equip. Co.),* 850 F.2d 342, 344 (8th Cir. 1988). In order to determine whether a fair economic exchange has occurred, the court must analyze all the circumstances surrounding the transfer in question. 5 Collier on Bankruptcy

¶ 548.05.[1][b] at 548–35 (Alan N. Resnick & Henry J. Sommer eds., rev. 15th ed. 2007).

\* \* \*

Whether a debtor received a reasonably equivalent value is analyzed from the point of view of the debtor's creditors, because the function of this element is to allow avoidance of only those transfers that result in a diminution of a debtor's prepetition assets. *Fox Bean Co.,* 287 B.R. at 281 (citing *Roosevelt v. Ray (In re Roosevelt),* 176 B.R. 200, 206 and 208 (9th Cir. BAP 1994)). *See also Frontier Bank v. Brown (In re N. Merch., Inc.),* 371 F.3d 1056, 1059 (9th Cir. 2004) (the "primary focus ... is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors."); *Viscount Air Servs., Inc. v. Cole (In re Viscount Air Servs., Inc.),* 232 B.R. 416, 435 (Bankr. D. Ariz. 1998) (noting that the focus is whether the net effect of the transaction has depleted the bankruptcy estate).

The concept is not particularly esoteric; a party receives reasonably equivalent value if it gets roughly the value it gave. *VFB LLC v. Campbell Soup Co,* 482 F.3d 624, 631 (3rd Cir. 2007). *See also Lindquist v. JNG Corp (In re Lindell),* 334 B.R. 249, 255–56 (Bankr. D. Minn.2005) ("A determination of reasonably equivalent value is fundamentally one of common sense, measured against market reality." (quotation omitted)).

*In re Jordan*, 392 B.R. 428, 441-42 (Bankr. D. Idaho 2008). The Third Circuit agrees that "[t]he purpose of the laws is estate preservation; thus, the question whether the debtor *received* reasonable value must be determined from the standpoint of the creditors." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991), *as amended* (Oct. 28, 1991) (emphasis in original).

The evidence presented shows that *at the time of the transfer*, in addition to RP12's tax lien of more than $18,000.00 Complaint, ¶ 14, there were at least $197,000.00 in liens against the Property, Complaint ¶ 12, and the Property had a value of $55,000.00. These numbers alone demonstrate that at the time of the transfer there was over a (-$160,000.00) in value in the Property at the time of the transfer. It was under water.

Using its common sense, and based upon the totality of the circumstances, the court is hard-pressed to find that the transfer resulted in any diminution of or depletion to the Debtor's estate. There was simply not less than reasonably equivalent value transferred since we look to the Property *at the time of the transfer* and at that time, there were liens against the Property that exceeded its value by $160,000.00. The court cannot ignore the reality that voiding the transfer would place the Property back to the time as it existed at the time of the transfer — with $197,000.00 of additional liens in place. With no equity in the Property, the transfer did not deplete the bankruptcy estate or adversely affect creditors. Estate preservation does not even come into play. The Debtor could not receive less than reasonable equivalent value as there was none to give. There is no voidable transfer.

What is more, a debtor cannot exercise the same avoidance powers as chapter 13 trustee under Section 548. *In re Wright*, 649 B.R. 625, 629 (Bankr. D.N.J. 2023). Rather, a debtor may avoid a transfer pursuant to Section 522(h), 11 U.S.C. 522(h), and avoidance through this section is limited to the extent of a debtor's exemption in the property. *Id*. at 629-30. A debtor seeking to avoid a judgment lien must show she had an interest in the property *before* the lien affixed to the property. *In re Denillo*, 309 B.R. 866, 869-70 (Bankr. W.D. Pa. 2004) (emphasis in original) (citing *Farrey v. Sanderfoot,* 500 U.S. 291, 296 (1991)). A debtor cannot prevail, however, if the lien sought to be avoided affixed *before* debtor acquired that property interest. *Id*. (emphasis in original). When a debtor acquires an interest in a property simultaneously with attachment of a pre-existing lien to the property, the debtor did not hold an interest in the property prior to the fixing of the lien and the lien cannot be avoided. *Farrey*, 500 U.S. at 299-300. The same outcome occurs when a property subject to a judgment lien is transferred from multiple owners to a single owner. *In re Zullo*, 581 B.R. 417, 423 (Bankr. D.N.J. 2017) (where two judgment liens had attached to real property debtor and his wife owned as tenants by the entireties and were "fixed" for purposes of 11 U.S.C.S. § 522(f)(1) prior to transfer of the property to debtor as fee simple owner, debtor could not avoid the liens under § 522(f)(1) because debtor's interest was acquired after the liens attached).

In this case, the Debtor has not claimed an exemption in the Property. Even if she had claimed an exemption, she could not avoid at least some of the judgment liens against the Property. Under New Jersey law a "judgment in the action shall be a lien on defendant's real estate acquired either before or after the entry thereof." N.J.S.A.§ 2A:26-11. For instance, the pre-existing judgment lien against Edgar Franco, a co-heir and co-inheritor, attached contemporaneously to Debtor acquiring an interest in the Property and is not avoidable as the Debtor did not hold an interest in the Property prior to the fixing of the judgment lien against Edgar Franco's interest in the Property. *Farrey*. The Debtor cannot avoid the 2017 judgement lien against Felicita Franco which was fixed prior to the Debtor obtaining fee simple ownership of the Property in 2019 because debtor's new fee simple ownership of the Property was acquired after the judgment lien attached. *Zullo*. At best the Property is worth $55,000.00 and was subject to the tax sale certificate and the unavoidable liens against Edgar Franco and Felicita Franco. The Debtor never had any equity in the Property to recover.

Given all this, the court is at a loss as to how it could ignore the existing liens at all since setting aside the Final Judgment would simply place the Property back as it existed at the time of the transfer — with the unavoidable liens. To date, the Debtor has not even taken the basic step of claiming an exemption in the Property or amending her plan to indicate an intent to avoid judicial liens. Even if she does, her lien avoidance powers are limited and based upon the liens that existed at the time of the transfer, there would be no value to the bankruptcy estate or benefit to her creditors. From the standpoint of the creditors, there is nothing here. *Mellon Bank, N.A.*, 945 F.2d at 646.

The Debtor cannot state a claim to relief that is plausible on its face and accordingly, Count II of the Complaint is dismissed.

<u>Rooker-Feldman Doctrine</u>

Although the Complaint will be dismissed outright due to its failure to state a plausible claim, the court wishes to address the issue of the *Rooker-Feldman* Doctrine raised by RP12. While this may be merely academic at this point, the court concludes, as urged by the RP12, that the *Rooker-Feldman* Doctrine applies to the Debtor's claims as the adversary complaint is an improper collateral attack on the Final Judgment. The *Rooker–Feldman* Doctrine prevents lower federal courts from exercising subject matter jurisdiction in certain circumstances. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 163–64 (3d Cir. 2010). Under the doctrine parties are prevented from bringing claims in federal district courts when the plaintiff in federal court seeks to void the state court judgment. The purpose of *Rooker–Feldman* is to prevent "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 166 (citation omitted). Under the doctrine, there are four requirements are to be met:

(1) the federal plaintiff lost in the state court;

(2) the plaintiff 'complain[s] of injuries caused by [the] state court judgments;

(3) those judgments were rendered before the federal suit was filed; and

(4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining,* 615 F.3d at 166. Without question, the *Rooker–Feldman* doctrine is applicable in bankruptcy cases.

Applying the *Rooker-Feldman* factors to the undisputed facts of this case, the court finds:

(1) the Debtor effectively lost in the state court as she forfeited all rights to ownership of the Property and the excess equity;

(2) the Debtor complains that the state court has unconstitutionally deprived her of her the Property and excess equity in the Property;

(3) the Final Judgment in foreclosure was final prior to the filing of this adversary proceeding; and

(4) the Debtor is inviting the court to review and reject the state judgment suggesting that she has a separate Constitutional claim based upon the *Tyler* ruling. But as analyzed above, the New Jersey legislature addressed the *Tyler* ruling in its amendments to the TSL and the 2024 TSL remains good law.

Based upon this application of the *Rooker-Feldman* factors it is clear that this adversary proceeding is an improper collateral attack upon the state court Final Judgment that this court may not entertain.

## **CONCLUSION**

The court concludes that since the New Jersey legislature amended the Tax Sale Law to specifically address the constitutional concerns raised in *Tyler* and *Roberto I*, and that the 2024 TSL governs this transaction, the Debtor's takings claim fails. In addition, the Debtor is unable to demonstrate that there was less than reasonably equivalent value involved in the transfer and consequently, cannot succeed on a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(B) of the Bankruptcy Code. Finally, this adversary proceeding is an improper collateral attack upon the state court Final Judgment under the *Rooker-Feldman* Doctrine. For all of the foregoing reasons the Debtor's adversary complaint is dismissed.

Dated: March 17, 2025

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge
For the District of New Jersey